## HILL *vs.* THE MAYOR, ETC., OF DALTON.

1. An accusation for selling spirituous, intoxicating or malt liquors within the corporate limits of a city, in violation of the municipal ordinance, was not rendered bad because it did not state to whom the liquor was sold.

2. A municipal ordinance which provided that "no person or persons shall be allowed to sell any spirituous, intoxicating, fermented or malt liquors in the incorporate limits of the city of Dalton, in any quantity, either directly or by selling any other commodity and giving away liquor, nor under any other device or disguise whatever," and imposed a penalty for its violation, did not provide for the same offense as §4565 of the Code, which prohibits the keeping of a tippling house or the retailing of spirituous liquors without a license. The former prohibits the sale, the latter only requires a license; nor are the two identical in respect to the class of liquors provided for.

(*a.*) The city of Dalton had ample power to pass the ordinance in question.

(*b.*) If the offenses were the same, general power existed prior to the constitutions of 1868 and 1877 in the corporate authorities to

try for this offense; nor was the law unconstitutional because no provision was made for a jury trial for the violation of the municipal ordinance.

April 8, 1884.

Criminal Law. Municipal Corporations. Constitutional Law. Before Judge FAIN. Whitfield Superior Court. October Term, 1883.

Reported in the decision.

T. R. JONES; McCAMY & WALKER, for plaintiff in error.

W. K. MOORE; McCUTCHEN & SHUMATE, for defendants.

JACKSON, Chief Justice.

The plaintiff in error was accused, before the mayor of Dalton, of the offense of selling spirituous, intoxicating, malt and fermented liquors within the limits of that city; the accusation charging that he did, on the 18th day of June, 1883, then and there sell intoxicating liquors, spirituous liquors, fermented liquors and malt liquors, each being severally charged by repeating his name and charging that he then and there did sell each sort of liquor. The proceeding was had under the following ordinance:

" * * * No person or persons shall be allowed to sell any spirituous, intoxicating, fermented or malt liquors in the incorporate limits of the city of Dalton, in any quantity, either directly or by selling any other commodity and giving away the liquor, nor under any other device or disguise whatever. Any person or persons violating the provisions of this ordinance shall, upon conviction before the mayor or three members of the council, be fined for each offense fifty dollars, or in default thereof twenty days in the calaboose and twenty days' work on the public works of the city, or all these, in the discretion of the mayor or three members of the council."

Plaintiff in error was found guilty by the mayor, and brought the case before the superior court by writ of *certiorari*. The superior court, after a slight modification of

the sentence, in regard to the marshal's costs, affirmed the mayor's judgment, and that affirmance is the error complained of here.

1. The accusation was demurred to, because it did not set out to whom the liquor was sold. This was unnecessary, and was not insisted upon in argument here.

2. The point relied upon here is, that the offense was within the crime of retailing spirituous liquors without a license under section 4565 of the Code, and the superior court therefore only had jurisdiction of the offense upon indictment of the grand jury, and the defendant had the right to be tried before a jury in that court. It seems to us that the principle ruled in *Rothschild vs. The City of Darien*, 69 *Ga.*, 503, covers this case. There it was held that "a provision in a city ordinance making it penal to open any store on Sunday for the sale of merchandise of any kind or sort, works of necessity, etc., excepted," was not covered by the state law, and could be enforced. This was a well considered case, and authorities from prior decisions were all considered. The distinction between the ordinance and Sunday state law is there drawn.

In the case before us now, the ordinance of the city of Dalton providing for this offense is wholly unlike the provision of the Code cited—section 4565. That section declares:

"If any person shall keep a tippling shop, or sell by the quart, without the license and taking the oath prescribed in this Code, or sell by retail in quantities less than one quart, any wine, brandy, rum, gin, whiskey or other spirituous liquors, or any mixture of such liquors in any house, etc., or other place whatever, without license from the ordinary of the county, or without license from the corporate authorities of any town or city, where by law authority to grant license is vested in the corporate authorities of such towns or cities, such person," etc.

So that the provision in the penal Code is wholly unlike, and makes different offenses from, that made by this ordinance. The Code makes it punishable to sell by the quart or retail without a certain oath and getting license from

the corporate authorities, where they have power to grant licenses; this ordinance provides for punishing without regard to license or oath or quantity; the ordinance is prohibition pure and simple; the Code is license, on condition of an oath taken and a certain revenue or tax collected by the county or city; this ordinance embraces any intoxicating liquor, whether spirituous, malt or fermented; the Code embraces only wine, brandy, rum, gin, whiskey or other spirituous liquors or any mixture of such liquors, leaving out malt and fermented and all other intoxicating liquors of any kind; any liquor which makes drunkenness is prohibited and punished by the ordinance; only that which is spirituous, by the Code.

The facts of this case show the distinction. Defendant could not have been convicted under the Code. There is no proof that he sold either of the liquors enumerated in the Code, or any spirituous liquor, or any mixture of the liquors there enumerated. This must have been proved to the satisfaction of the jury, beyond a reasonable doubt, in the superior court, under the Code; but the proof is full that he sold something which made men drunk. What it was, nobody seemed to know; but that it intoxicated, and came up to the prohibition against selling any intoxicating liquor, is clear. It is clear that he violated this ordinance; it is doubtful, to say the least, that he violated the Code. One man swore that in the ginger ale, or ginger pop, he thought there was whiskey, because of the smell, but he did not know or swear with any sort of certainty to it.

Thus it seems clear that the offenses are different, and the ruling in *Rothschild vs. Darien* controls the case. But if it did not, the very section 4565 of the Code does; for it enacts this proviso: " Provided no person shall be liable to indictment in the superior courts of this state for a violation of this section, when said person has been already tried by the corporate authorities for the same offense."

So that, had it been the same offense, the enactment is

that the corporation had jurisdiction as well as the superior court.

That the city of Dalton had ample power to pass the ordinance under which the plaintiff in error was punished, see the charter of the city, in acts of 1874, pp. 182–3, 185–6. This charter shows absolute authority over the whole liquor question. It gives the corporation power to grant license, and thereby raise revenue to go into its coffers instead of into the coffers of the state, and thus to make the traffic pecuniarily profitable, or to refuse license, and thereby prohibit the traffic, and thus to make the prohibition of the traffic socially and morally profitable. It chose the latter wisely, and the courts should be slow to upturn its policy and declare it untenable, on constitutional and legal grounds; and should not do so except its action was shown to be manifestly illegal or unconstitutional. Such does not appear from this record. If not the same as the state law, most clearly it is no violation of the constitution; because that instrument only requires trial by jury for offenses against the state. If the same as the state crime even, then general power or right existed before the constitutions of 1868 and 1877 to try for this offense by the corporate authorities, and the fact that Dalton's charter was subsequent makes no difference. The license law, or power to grant license, was a general law as to all municipal corporations, and inhered in the very existence of such corporations whenever created. Section 4565 of the present Code is identical with section 4440 of that of 1863, which was compiled in 1860, and evidently nobody contemplated that the police courts of cities or towns should have juries. The constitution of 1877 provides for other courts, and the provision on jury trial must be construed in connection with this grant. By the 1st paragraph, of the 18ths ection of 6th article of the constitution, Code, §5174, it is declared that "the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate," etc. The words "except where otherwise provided," etc., as

construed in *Freeman et al. vs. McDonald et al.*, took the proceeding to test an election for city officers out of trial by jury, on the facts of such a contest for office, which office is property. See that case, this term, not yet reported.

So the words "shall remain" take all matters of police power in cities without the operation of that paragraph; because there never had been in this state such jury trials in police courts, and therefore there was nothing to remain inviolate in the matter of jury trial in such courts.

If paragraph 5th of the bill of rights in article 1st of the constitution be invoked, Code, §4997, and relied upon as giving such right of jury trial, then this provision is no bar to this police trial; first, because this is an offense against the city, and not against the laws of the state, as we have seen above; and secondly, because such or equivalent provisions in the constitution of the United States and all the constitutions of this state, have never been held to apply to police of cities and towns and arrests and trial, with fine and imprisonment therein, under ordinances thereof. See Cons. of 1798, Sec. 5, Art. 4, Cobb's Digest, p. 1125, and all other constitutions of Georgia to this day, and Cons. of U. S., par. 3, Sec. 2, Art. 3, and amendment, Art. 6, Cobb's Digest, p. 1109; *Williams vs. City of Augusta,* 4 *Ga.,* 509; *Floyd vs. Town of Eatonton,* 14 *Id.,* 354; *Perdue vs. Ellis,* 18 *Id.,* 586.

It is well that such is the law, the constitutional law; for if no man could be fined or imprisoned for violation of city police ordinances, except by jury trial on indictment, away would go all power in our municipal authorities to preserve peace and good order within their corporate powers.

Judgment affirmed.