# MᶜINERNEY v. CITY OF DENVER.

1. WRIT OF PROHIBITION—DISCRETION IN GRANTING.—In this country the writ of prohibition is not granted in any case *ex debito justitiæ*, but rests in the sound discretion of the court. Such discretion should only be favorably exercised, however, when the ordinary forms of relief are insufficient, and never if the complaining party has another adequate remedy at law.

2. LEGITIMATE INQUIRIES ON WRIT.—The only inquiries permitted upon prohibition are whether the inferior tribunal is exercising a jurisdiction it does not possess, or, having jurisdiction over the subject-matter, has exceeded its legitimate powers.

3. POLICE COURTS MAY CONSIST OF DIFFERENT GRADES.—Under the constitution there may be different classes or grades of police courts. And if the statute providing for each class be applicable to all cities of the size designated, it is not in conflict with the constitutional provision inhibiting local or special legislation. The police court act of 1885, Sess. Laws, p. 290, does not create a special court for the city of Denver alone, and is valid in this respect.

4. MUNICIPAL CORPORATIONS — OFFENSES PUNISHABLE BY STATUTES AND ORDINANCES. — The legislature may delegate to municipal corporations power to adopt and enforce ordinances on matters of special local importance though general statutes exist relating to the same subjects. The same act may constitute a crime against the public law of the state, and also a petty offense against a municipal regulation. The two offenses in such case being different, each may be punished without violation of the constitutional inhibition against placing one twice in jeopardy for the same offense.

5. RESTRICTING JURY TRIAL.—Where trial by jury is a constitutional right, it is doubtful if a statute permitting this right to be exercised only upon an appeal, there being no unreasonable restrictions connected with the appeal, is legal. But under the police court statute, *supra*, the right of appeal and jury trial in connection therewith is so unreasonably clogged with restrictions that the rule mentioned, even if valid, would not be applicable.

6. CONSTITUTIONAL GUARANTY BASED ON EXISTING PROCEDURE.—The provisions of the constitution guaranteeing trial by jury and the like in criminal cases were adopted with reference to the procedure theretofore generally existing. And if in a given class of offenses, trials without a jury were the prevailing rule, this rule is not changed by the constitution.

7. VIOLATORS OF MUNICIPAL ORDINANCES, NOT ENTITLED TO JURY TRIAL.—Violations of municipal ordinances constituted a class of offenses that were in general, throughout the country, proceeded

against summarily before the constitution, and the right of trial by jury in connection therewith does not now exist; this is true even where the act constituting the local offense is also a public misdemeanor under a statute.

8. **Rule as to Offenses of a New Description.**—A particular offense which was unknown before the adoption of the constitution is now triable by jury, or not, according to its *status* as naturally falling within a class of offenses that were or were not theretofore so tried.

9. **Prosecutions under City Ordinances, or Statutes, or both.**— The declaration of the statute conferring exclusive power upon the city to license and regulate tippling houses, that "all laws of the state concerning Sunday closing shall be in force in said city," was employed for the purpose of avoiding exclusive control of the particular subject by the city council. The offender may be proceeded against under either the city ordinance or the general statute, or both.

10. **An Oppressive and Unreasonable Provision of Ordinance void.**—An ordinance, providing that upon a second conviction, the license and the money paid therefor shall be forfeited and remain forfeited, though upon appeal and trial *de novo* an acquittal takes place, is so oppressive and unreasonable that in this particular it is void.

11. **When both Fine and Imprisonment not permitted.**—The statutory power to enforce ordinances "by a proper fine, imprisonment or other penalties" does not permit the infliction of both fine and imprisonment as substantive punishments for the same offense.

*Original Application for Prohibition.*

Mr. H. B. O'Reilly and Mr. Caldwell Yeaman, for petitioner.

Mr. F. A. Williams, city attorney, and Mr. G. W. Whitford, for respondents.

Mr. Justice Helm delivered the opinion of the court.

Petitioner has been a second time found guilty of violating an ordinance prohibiting the keeping open in the city of Denver of dram shops and tippling houses between the hours of 12 o'clock midnight on Saturday, and 5 o'clock a. m. on the following Monday. The police magistrate has overruled an application to set the conviction aside, but, though inti-

mating what his judgment would be, has not yet pronounced the same. This judgment under the ordinance may include both fine and imprisonment. A forfeiture of petitioner's license to sell liquors, and of the money paid therefor, also follows this second conviction.

While there is contrariety of expression among the English decisions concerning the writ of prohibition and its uses, the weight of authority in England probably sustains the positions urged upon us by counsel for petitioner, viz.: That this writ is a writ of right, and that when one of the recognized grounds appears, a superior court must issue the same notwithstanding adequate relief might ultimately be obtained by appeal or by some other remedy. Shortt on Mandamus, Quo Warranto and Prohibition, 439, *et seq.* But the American cases fully authorize the conclusions reached by Mr. High in his work on Extraordinary Legal Remedies, that the writ is not granted *ex debito justitiæ*, but rests in the sound discretion of the court (sec. 765); also, that it should be made use of only when the ordinary forms of relief are insufficient, and never if the complaining party has another adequate remedy at law (secs. 770, 771). The latter practice has been adopted by this court, and the subject may fairly be treated as *stare decisis* in this state. *Leonard v. Bartels,* 4 Colo. 95.

But neither in England nor in America is this proceeding allowed to supersede the ordinary functions of an appeal or writ of error; the only inquiry permitted being whether the inferior tribunal is exercising a jurisdiction it does not possess, or having jurisdiction over the subject-matter has exceeded its legitimate powers. High, sec. 781.

The jurisdictional challenge in the case at bar is made upon two grounds: *first,* that the legislative act under which the police court of Denver exists is unconstitutional, and therefore that respondent Sopris is illegally attempting to exercise judicial power; *second,* that the ordinance relating to Sunday closing is invalid, and the procedure provided for the police magistrate illegal, hence even if the court be law-

fully constituted, it is exercising a jurisdiction for which there is no warrant of law.

While these questions might be reconsidered upon a trial *de novo* in the county court, and likewise by this court upon writ of error to the county court, in view of the fact that besides an illegal forfeiture an illegal imprisonment might in the meantime be suffered, we are not prepared to say that the remedies thus provided are adequate.    We conclude that, under all the circumstances, our discretionary power in the premises should be favorably exercised, and will proceed to consider the questions of jurisdiction presented.

The act to which the police court of Denver owes its existence is found in the Session Laws of 1885, p. 290.   Sec. 1 of this act declares that: " In all cities in this state containing a population of twenty-five thousand or more inhabitants, whether organized under a special charter or a general act * * * there are hereby created and established certain courts, to be called police magistrates' courts."   We cannot concede the correctness of counsel's contention that the legislature in this provision attempted to evade a constitutional mandate by creating a special court for a particular city under the disguise of a general law..  It may be true, as asserted in argument, that Denver was the only city then having twenty-five thousand inhabitants; but the language employed tends to negative the idea that the act was passed solely with reference to Denver.    For it provides for " courts " not a court, and refers to " all cities " of the requisite size " whether organized under a special charter or a general act," etc.   It is perhaps a little unfortunate that the police courts are spoken of as " *hereby* created and established."    But these words must be construed in the light of sec. 26, art. 6 of the constitution, which deals exclusively with the subject of police courts, and simply authorizes the legislature " to provide for creating " them.    In view of this constitutional provision, and in accordance with recognized rules of construction, we conclude that the legislative intent was to provide for the establishment of police courts in cities that might

thereafter attain the requisite population, as well as in those which were then sufficiently large.

Nor is the act obnoxious, as claimed, to secs. 25, art. 5 and 28, art. 6 of the constitution. True it is that the legislature has provided for three classes of police courts, differing somewhat from each other in their organization. But since the statutes referred to apply to all cities or towns in the respective classes designated thereby, they cannot be regarded as local or special laws. And nothing more need be said of this objection in so far as section 25 is concerned:

There may be doubt as to whether sec. 28, art. 6 of the constitution was intended to cover police courts. But if we assume that these courts are included, it is certain that they may be divided into different classes or grades. Sec. 26 of the same article directs the legislature, as we have already seen, to " provide for the creation " of " such " police courts " for cities and towns as may be deemed from time to time necessary or expedient," with jurisdiction over all violations of ordinances in the different cities and towns "respectively." The peculiar phraseology thus employed indicates clearly that the constitutional convention had in mind the consideration which is emphasized by another constitutional provision (sec. 13, art. 14), that cities and towns must of necessity be divided into different classes, organized in a different way, and clothed with somewhat different governmental powers and authority. The palpable fact that a police court adapted to the wants of a city of two thousand inhabitants might be utterly insufficient for a city of twenty-five or fifty thousand people, is here recognized by the framers of the constitution. This provision sanctions police courts differing somewhat in organization and procedure for different classes of cities and towns.

As already observed, each of the statutes relating to these courts applies alike to all cities or towns of the particular size or class therein designated. And so far as the present constitutional objections are concerned, we shall hold that

the police court challenged in this case is legally established. *Rogers v. The People,* 9 Colo. 450.

We encounter greater difficulty in disposing of the remaining general objection urged by counsel for petitioner, viz.: That the ordinances through which petitioner's conviction took place are invalid, and therefore the police court is proceeding illegally.

Great reliance is placed upon the proposition that since by general statute the act with which petitioner is charged is made a misdemeanor punishable by indictment or information, trial by jury, etc., the ordinances involved are obnoxious to a number of constitutional provisions touching criminal cases.

The legislature may undoubtedly delegate to municipal corporations power to adopt and enforce by-laws or ordinances on matters of special local importance, even though general statutes exist relating to the same subjects. An ordinance must be authorized and must not be repugnant to a statute in force over the same territorial area; but if there be no other conflict between the provisions of the statute and ordinance save that they deal with the same subject, both may be given effect. The resulting or correlative doctrine is now too firmly established to admit of serious question that the same act may constitute two offenses, viz., a crime against the public law of the state, and also a petty offense against a local municipal regulation. The weight of authority likewise fairly sustains the view that a prosecution and punishment for one of these offenses is no bar to a proceeding for the other. Though, if it be not so provided by statute, every fair-minded judge will, when pronouncing judgment in the second prosecution or proceeding, consider a penalty already suffered. Since the act constitutes two distinct offenses against separate jurisdictions, it is analogous to those cases where the same act is punishable under a congressional statute, and also under a state law. The offenses being different, there is no violation of the constitutional inhibition against putting one twice in jeopardy for the same offense.

These views have already in substance been sanctioned by this court. *Hughes v. The People*, 8 Colo. 536; and they are sustained by the following, among other authorities: Cooley's Const. Lim. (5th. ed.) 241, 242, and note 1; Dillon, Mun. Corp., secs, 367, 368 and note 1; Bishop, Stat. Crimes, sec. 23; Wharton's Crim. Pl. & Pr., sec. 440; *State v. Lee*, 29 Minn. 453; *Waldo v. Wallace*, 12 Ind. 569; *State v. Topeka*, 36 Kans. 76; *Greenwood v. The State*, 6 Bax. 567; *Howe v. Treasurer*, 37 N. J. Law, 145; *Mayor, etc. v. Allaire*, 14 Ala. 400; *Hamilton v. State*, 3 Tex. Ap. 643; *Shafer v. Mumma*, 17 Md. 331; *State v. Sly*, 4 Oregon, 277; *Johnson v. State*, 59 Miss. 543; *Wragg v. Penn Township*, 94 Ills. 11; *McLaughlin v. Stephens*, 2 Cranch (C. C.) 148; *City v. Cafferata*, 24 Mo. 96; *Rogers v. Jones*, 1 Wend. 238; *Cross v. North Carolina*, 132 U. S. 131.

But we are told that admitting that the same act may be an offense against each of two different sovereignties or laws, and that the act or may be punished for each of the offenses, it does not follow that the *procedure* may be different. And it is confidently asserted that summary proceedings without a jury in cases like the present cannot be constitutionally sustained.

This court has already adopted the view that in prosecutions for the violation of a municipal ordinance, where the offensive act is not also a misdemeanor by general statute, the constitutional provisions relating to indictments and trial by jury in criminal cases, do not apply. And the fact that imprisonment in the first instance may be a part of the penalty does not affect the conclusion. *City of Greeley v. Hamman*, 12 Colo. 94. But the opinion in that case expressly disclaims any intimation as to the result when " the offense mentioned in the ordinance is also covered by a public criminal statute." See also, *Durango v. Reinsberg*, 16 Colo. 327. The precise question now submitted is therefore one of first impression here.

There is excellent authority for the proposition that an ordinance providing for summary proceedings without a jury

is, in that respect void, if the offensive act be also a statutory misdemeanor punishable by indictment and jury trial. A number of the decisions holding this view declare, however, that if the defendant is entitled on appeal to a trial by jury, and there be no reasonable limitation connected with the appeal, the constitutional provisions are satisfied. 1 Dillon, Mun. Corp. (3d ed.) sec. 439. But if the offender against a municipal ordinance has a constitutional right to a trial by jury, the correctness of the latter proposition is extremely doubtful. As a distinguished jurist has well said: " If congress (or a state legislature) has the power to deprive the defendant of his right to a trial by jury for one trial and to put him, if convicted, to an appeal to another court to secure a trial by jury, it is difficult to see why it may not also have the power to provide several trials by a court without a jury, or several successive convictions before allowing a trial by jury. In my judgment, the accused is entitled not to be first convicted by a court and then to be acquitted by a jury, but to be convicted or acquitted in the first instance by a jury." Mr. Justice Blatchford, in *In re Dana*, 7 Benedict, 14 ; *Callan v. Wilson*, 127 U. S. 540.

But it is unnecessary to prolong this feature of the discussion. For it cannot be said that the appeal which petitioner would be entitled to take from a judgment of the police magistrate against him in the case at bar, is not unreasonably clogged with restrictions. He must first execute a bond with approved sureties conditioned not merely for his appearance in the appellate court, but also for payment of any judgment rendered on appeal ; and he must likewise as a condition precedent to the appeal, pay all costs accrued in the police court.

The question then recurs : Is the proposition tenable in view of settled legal principles, that solely because an act in violation of a municipal by-law is also a misdemeanor under a public statute punishable by indictment and jury trial, a summary proceeding for the former offense is unconstitutional?

Why should the existence or adoption of a general statute on the same subject change the rule relating to summary proceedings for violation of an ordinance where such proceedings are valid before or without the statute? It does not alter the relation of the ordinance toward the constitution; it does not change the nature or gravity of the local offense. It is a legislative recognition that the act referred to is of sufficient importance to receive legislative notice and condemnation; but it is not logically a legislative declaration that the offense against the ordinance is to be afterwards treated as of the same importance or grade. The local injury is precisely the same whether a general statute on the subject exist or not. And the intrinsic and logical difference between an offense against a municipal ordinance and one against a public law is not affected by the fact that both may spring from the same act.

We will content ourselves for the present with a reference to two serious objections to the view urged upon us in this behalf by petitioner's counsel. *First*, this view entails the following curious result: An ordinance providing for a summary proceeding without a jury and the statute authorizing the ordinance are to-day perfectly constitutional and valid; but to-morrow a statute declaring the same act a public misdemeanor takes effect, and, without any claim of an implied legislative repeal, *presto change*, the former law and the ordinance at once become unconstitutional and void. That is to say, although the first statute and the ordinance thereunder are in and of themselves perfectly constitutional, the passage of an additional general law renders them both unconstitutional. The supposititious case above put is not farfetched. For conduct that has long been a subject of local municipal regulation but was not regarded as a misdemeanor at the common law is frequently raised by legislatures to the dignity of a public criminal offense.

*Secondly*, if the proposition urged by counsel in this behalf be correct, the following offenses against municipal ordinances must be prosecuted by jury trial, viz.: The injuring

or obstructing of streets or alleys, the obstructing or polluting of sewers, the establishing of offensive trades or manufactories, assaults, assaults and batteries, disturbances of the peace, unlawful assemblages, riots, routs, indecent exposures, the keeping of gambling houses, of houses of prostitution, soliciting on the street by prostitutes, carrying concealed weapons, disturbances of Sunday worship, bunco and confidence steering, the practice of fakiring devices in fraudulently selling articles on the sidewalk, etc., etc. For these and other acts which are here and everywhere regarded as matters very properly within the cognizance of local municipal government are also misdemeanors under the statute and subject to trial by jury. Vagrancy is, we believe, the only statutory misdemeanor that is likewise a matter of local municipal cognizance wherein a jury trial is not accorded under the statute. It is needless to say that a judicial recognition of the right to a trial by jury in all the local offenses above enumerated, would seriously impair the usefulness and efficiency of city governments. Whatever may be the view concerning the gravity of the offense against a state law, the very fact that the legislature authorizes the city to deal with the same subject by ordinance indicates that to the legislative mind, the act also properly constitutes one of those petty offenses regarded as local injuries. The public welfare, requiring the maintenance of peace and good order as well as of careful sanitary regulations in cities and towns, renders summary proceedings in many cases a necessity. And we are not now prepared to inaugurate the revolution that must follow the announcement of the doctrine that a jury trial is an indispensable prerequisite. It is hardly necessary to say that such a trial is not always essential to " due process of law," or that it is not implied in the principle that every man judicially adjudged against shall have " his day in court."

We have heretofore declared that the framers of the constitution attached to the terms " crime," " crimes " and " criminal prosecutions " therein employed, their ordinary legal

meaning. Also, that by statute when that instrument was written as well as at present in this state, the definition of a crime given by Blackstone and generally adopted elsewhere was and is a part of our law. Sec. 689, G. S., reads: " A crime or misdemeanor consists in a violation of *a public law*, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence." But an ordinance is not in the constitutional sense a public law. It is a mere local rule or by-law, a police or domestic regulation, devoid in many respects of the characteristics of public or general laws. *City v. Hamman, supra*, and authorities cited.

Again, the provisions of the constitution relating to trial by jury, being twice in jeopardy, proceedings by indictment or information, and the like, in criminal cases, were adopted with reference to the procedure theretofore generally existing in this country. If in a given class of offenses, trials without a jury were formerly the prevailing rule, this rule is not changed by the constitution. Cooley's Const. Lim. (5th. ed.) 390, note 3; Sedwick, Const. of Stat. & Const. Law, note, p. 487, note on p. 491 and p. 497; Pomeroy, Const. Law, sec. 246 ; Proffatt on Jury Trials, sec. 95 ; *State v. Glenn*, 54 Md. 572; *Ex parte Kiburg*, 10 Mo. Ap. 447 ; *People v. McCarthy*, 45 How. Pr. 97 ; *Howe v. Treasurer, supra; McGear v. Woodruff*, 33 N. J. Law, 215 ; *State v. Topeka, supra; Inwood v. State*, 42 Ohio St. 186 ; *Hill v. The Mayor*, 72 Ga. 319; *Williams v. Augusta*, 4 Ga. 509 ; *Floyd v. Com'rs*, 14 Ga. 356 ; *Shafer v. Mumma, supra; Ward v. Farwell*, 97 Ills. 593 ; *City of Greeley v. Hamman, supra.*

The inquiry therefore is not, was the *act* complained of a public misdemeanor by statute or at the common law, but does the *offense* charged belong to a class of offenses that were usually proceeded against summarily? A careful examination of authorities has led us to the conclusion that, both in this country and in England, the transgression of municipal regulations enacted under the police power for the purpose of preserving the health, peace and good or-

der, and otherwise promoting the general welfare within cities and towns had for more than a century prior to the adoption of our constitution, been generally prosecuted without a jury.  Sedgwick, Const. of Stat. & Const. Law, secs. 496, 497, also notes on 487, 491 ; Pomeroy's Const. Law, sec. 246 ; Proffatt on Jury Trials, sec. 95 ; *Williams v. Augusta, supra ; State v. Lee, supra ; State v. Glenn, supra ; Ex parte Hollwedell*, 74 Mo. 400 ; *State v. Conlin*, 27 Vt. 318 ; *State v. Keeper, etc.*, 20 La. Ann. 325 ; *State v. Topeka, supra ; Byers v. Commonwealth*, 42 Pa. St. 39 ; *Howe v. Treasurer, supra ; Shafer v. Mumma, supra ; McGear v. Woodruff, supra ; Ex parte Kiburg, supra ; State v. Sly, supra ; Floyd v. Com'rs, supra.*

Some cases there are which hold that a new offense created by statute since the adoption of the constitution is not covered by constitutional guaranties relating to trial by jury and the like.  The theory adopted being that these guaranties apply only to specific *cases* in which the rights named had, previous to the constitution, been recognized.  But we think it a sounder view that the principle referred to, in whatever words it may be stated, is more comprehensive.  And that it includes all statutory offenses created since the adoption of the constitution which belong to the *classes of cases* theretofore triable by jury, etc.  Proffatt on Jury Trials, sec. 98 and cases cited ; *State v. Topeka, supra ; Duffy v. The People*, 6 Hill, 79.  It will be observed that we have also recognized the converse of the proposition last above stated.  That is to say, that though a particular offense may have been unknown to the common or statutory law before the adoption of our constitution, yet if it clearly belongs to a *class of offenses* that were theretofore not triable by jury, the constitutional guaranties relating to jury trial do not apply.  *People v. McCarty, supra.*  To illustrate : Suppose the legislature creates a new felony hitherto unknown, and affixes a penalty of twenty years imprisonment in the penitentiary, ought this court to hesitate in declaring that the constitutional guaranty of a jury trial applies?  Suppose, on the

contrary, a city council ordains that to deposit banana peels on the sidewalk shall be an offense punishable by a fine of five dollars, or upon second conviction by two days imprisonment in the city jail, must we declare that the constitutional right to a trial by jury attaches, simply because the specific act was not noticed and hence not punished summarily before the constitution?

The act of which petitioner stands charged under the ordinance is, in the judgment of the city council of Denver, inconsistent with the peculiar solemnity, peace, good order and quiet that should characterize the Sabbath day within the city limits. And the violation of the ordinance unquestionably belongs to the class of petty offenses against local police regulations that were not generally triable by jury before the adoption of our constitution.

Another objection urged on behalf of petitioner is that since the statute clothes the city with exclusive power to license and regulate tippling houses, but provides that " all the laws of the state concerning Sunday closing shall be in force in said city ; " the council is not authorized to legislate upon the specific subject of Sunday closing. And that for this reason the ordinance under which the present proceeding takes place is void. We cannot accept the correctness of this proposition. In our judgment, the plain intention of the legislature was to say that while the city council may legislate on the subject of Sunday closing, yet its action in the premises shall not be exclusive. This language was employed for the purpose of avoiding exclusive control of Sunday closing by the city council, under the rule of construction as to similar statutes heretofore announced by this court. *Hetzer v. The People*, 4 Colo. 45 ; *Huffsmith v. The People*, 8 Colo. 175 ; *Royers v. The People, supra; City v. Hamman, supra;* see, also, *Cunningham v. The People*, 1 Colo. Court of Ap. 155.

Sec. 20 of the ordinance relating to tippling houses ordains that upon a second conviction the license issued by the city to sell liquors and the money paid therefore shall be forfeited

absolutely and *remain forfeited notwithstanding defendant may upon a trial de novo on appeal in the county court be acquitted of the offense.* That is to say, the ordinance in effect punishes the individual for an offense of which he is judicially found to be entirely innocent. Whatever may be correctly claimed with reference to the general power to revoke licenses, it is evident that in the present instance the forfeiture is intended by the council to be a penalty for the commission of a wrongful act. And we know of no principle that would sustain for a moment a forfeiture for a wrongful act where the licensee has been judicially acquitted of such act. This feature of the ordinance is so oppressive and unreasonable that it must be held void. Cooley's Const. Lim. 243; Dillon, Mun. Corp., sec. 319, *et seq.*

One only of the remaining objections presented by counsel for petitioner will receive specific consideration. The ordinance, in addition to a revocation of the license and forfeiture of the license fee, authorizes *both fine and imprisonment* to be imposed as substantive penalties in the same case. The power to provide reasonable pecuniary penalties—fines—for the violation of by-laws may be implied; and by some courts it is held that the power to "license and regulate" conveys also power to revoke in accordance with terms imposed upon issue of the license; but clear legislative authority is an essential condition precedent to the infliction of other penalties. Dillon, Mun. Corp., secs. 336, 338. And whatever penalties the charter designates are of course exclusive. Dillon, sec. 339. We say nothing of by-laws relating to the collection of taxes. The act under which the police court of Denver is organized expressly provides for commitment (not to exceed ninety days) till the "fine, penalty and costs" are fully paid. This imprisonment is simply a means for enforcing the penalty adjudged. Imprisonment in the first instance as a part of the judgment is not affirmatively authorized, though there is language that might perhaps be construed as a recognition of other penalties besides fines. But the authority of the council of Denver, so far at least

as substantive penalties are concerned, must be found in the charter amendment of 1891, enacted after the police magistrate statute became a law and before the adoption of the ordinance. By this amendment, the council is given " power to make all ordinances " needful, and " to enforce the same by a proper fine, imprisonment or other penalties." Session Laws, 1891, sec. 1, p. 75. Does this language sanction the penalties provided by the ordinance ? Discarding from consideration for the present, the revocation of the license, does this statute permit " fine and imprisonment " for the same offense ?

The statute of 1891 confers the power to punish violations of ordinances by a fine or by imprisonment, or by " other penalties." If the words " other penalties " were omitted, a single offense could be punished by either fine or imprisonment, but not by both fine and imprisonment. Therefore, if the council had power to provide for " fine and imprisonment " such power must be conferred by the words " other penalties." But this language was, in our judgment, employed in contradistinction to fines and imprisonments. The expression is " or *other* penalties," *i. e.*, penalties other than fines or imprisonments. To say that the phrase " other penalties " may in a given case include " fine and imprisonment " together, whereas it could not include either fine or imprisonment separately, would be at least paradoxical. No such distinction is advocated by counsel for respondents, and its recognition could hardly be justified. The " other penalties " referred to are penalties that do not include either of the two previously designated; such as revocation of licenses, forfeitures, distress and sale, and the like. Since the statute does not authorize the punishment by *fine and imprisonment*, this provision of the ordinance is also void.

We shall not prolong this opinion with a discussion of the query as to whether or not when one of the " other penalties " is prescribed for the violation of a particular ordinance, either fine or imprisonment can in the same case be coupled therewith. It has been held that licenses such as the one

under consideration are not to be regarded as property; hence, in effect, that the revocation thereof according to terms therein contained is not a forfeiture. *Hurber v. Baugh,* 43 Iowa, 514; but *contra,* see *Heise v. Town Council,* 6 Rich. L. 404. It is unnecessary for the purposes of the present decision to determine this question, or to consider the precise extent of the power possessed by the council in connection with the revocation of licenses.

That part of the ordinance relating to penalties is, in our judgment, fatally defective. The writ of prohibition should, therefore, issue in the present case, and it is so ordered.

*Writ awarded.*