[No. 7360]

## WALKER v. THE PEOPLE.

DENVER—*Regulation of the sale of Intoxicating Liquors Within—* Art. XX of the constitution has not the effect to confer upon the City of Denver exclusive power to regulate the sale of intoxicating liquors. Notwithstanding the provisions of this article and the measures adopted by the city for the regulation of the traffic, § 1798 Rev. Stat. is still in force, and in nowise suspended. The legislature may enact measures which will prohibit the traffic in all parts of the city.

*Error to Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Mr. ALEXANDER M. SMITH and Mr. A. R. MORRISON, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General, Mr. CHARLES O'CONNOR, Assistant Attorney General, for The People.

Mr. JUSTICE HILL delivered the opinion of the court:

The plaintiff in error was convicted on the charge of selling intoxicating liquor in less quantities than one gallon in the city and county of Denver without having a legal license therefor. He brings the case here for review upon error.

There is a contention pertaining to a state license being held by the defendant, but for the purposes of this case we will assume that he held the revenue license from the state. That he made the sale or sales alleged is not seriously contradicted, but it is claimed that the evidence discloses no violation of the laws of the state when it is assumed that he held the state revenue license. General section 1798, Revised Statutes, 1908, reads:

"Every person, not having a legal license therefor, who shall barter, sell, exchange, or otherwise dispose of, for his gain or benefit, to any person or persons, any

malt, vinous or spirituous liquors in less quantity than one gallon, or shall knowingly permit the same to be done on his or her premises, for his or her benefit, or gain, shall be deemed guilty of a misdemeanor, and, on conviction thereof, be punished by a fine of not less than one hundred nor more than five hundred dollars.''

The plaintiff in error contends, that by the adoption of article XX of the state constitution the state gave to the people of the city and county of Denver the exclusive power to make, alter, revise or amend their charter; that this, of necessity, included the exclusive right to provide for a system of licensing saloons as well as to fix penalties for the sale of liquor without a license; that the city having made such provisions the section above quoted has been suspended in this territory. We cannot agree with the correctness of this contention. The section above referred to is a general law and was, prior to the adoption of article XX, and still is, in force throughout the entire boundaries of the state. As we read it, it is not an attempt to regulate, and does not in any manner interfere with the regulation of, the liquor traffic in the city and county of Denver, or any other city or incorporated town in the state, and, so far as Denver is concerned, we find no difference in the provisions of its ordinances from those in many other cities and towns of the state under which the issuance of licenses for the sale of liquor and its regulations are provided for, but the section above referred to makes it a misdemeanor for anyone to make sale of intoxicating liquors without having a legal license therefor. The plaintiff in error does not contend that he was possessed of such a license from the city and county of Denver. For the purposes of the argument he concedes that he was a violator of its ordinances, but says to the state that it is a matter purely between him and the city. Such might have been the case had not the legislature

declared otherwise, having made the declaration without limitation as to territory we cannot concede that it was intended by the adoption of article XX to grant to the city and county of Denver anything that would interfere with this general statute concerning intoxicating liquors. If the argument of counsel was sustained it would be to nullify the entire provisions of the local option act adopted in 1907 in so far as the city and county of Denver is concerned, for the reason that if by the adoption of article XX the exclusive power to regulate the liquor traffic in the city and county of Denver is purely a local matter, it, of necessity, would prohibit the legislature from thereafter passing any law upon the subject which could be effective in this territory. This is contrary to the position assumed by the legislature in adopting the so-called local option act of 1907, as well as in conflict with the position assumed by this court in placing a construction upon certain provisions of that act in *Schwartz v. The People,* 46 Colo. 239, wherein we recognized the authority of the legislature to enact measures which would, under certain conditions, prohibit the sale of intoxicating liquor in all or certain portions of the city and county of Denver. This act was adopted after article XX was in force and allows, under certain conditions, precincts or districts in the city to decide this question for themselves, regardless of the position of the city as a whole upon the subject.

Had article XX of the Constitution delegated to the people of the city and county of Denver the power, exclusively, as the statute reads concerning the matters referred to in *Rogers v. The People,* 9 Colo. 450, or the exclusive power to regulate or prohibit the sale of intoxicating liquors, as the statute reads, which was under consideration in *Huffsmith v. The People,* 8 Colo. 175, we could accept the position of the plaintiff in error, but

it does not so read. It is only by implication that counsel make this deduction and then only when coupled with the assumption that the regulation of the liquor traffic is purely a local matter. We cannot agree with this contention; it is contrary to the position assumed in *Schwartz v. The People,* supra, and also in conflict with the opinion of this court in *Heinssen v. The State,* 14 Colo. 228, wherein the city's regulations were quite similar to those under consideration. The case of *Johnson v. The People,* 6 Colo. App. 163, is also adverse to the position contended for by the plaintiff in error.

A more recent case is that of *Keefe v. The People,* 37 Colo. 317, which is in principle adverse to the position of the plaintiff in error. In that case it was claimed that the work of building a sanitary sewer by the city of Denver was purely a local matter and for that reason the state law limiting the hours of employment upon public works was not applicable. This position was held tenable; the court said:

"The state still has the supreme power to enact general laws declaring what shall be its public policy, and it can make them applicable to the city of Denver, as well as to all other cities of the state. This act, in effect, declares that it is the public policy of the state not to permit any officer or agent of the state, or its municipalities, or any contractor thereof, to employ any working man in the prosecution of public work for more than eight hours a day, and for a violation of the statute a penalty is provided. What the public policy of the state is, rests with its legislative department. The work of building a sanitary sewer by a city, in a sense, is local, in that it affects, primarily, its own citizens; but it is directly connected with the public health, and is a matter of concern and great importance to the people of the entire state."

This language is applicable here. The regulation of the liquor traffic is certainly a matter of concern and great importance to the people of the entire state, and there is nothing in the language of article XX to justify the assumption that they intended to relinquish the right to legislate concerning it in any portion of the state. This position is further strengthened by the fact that heretofore exclusive local regulation had been given to Denver and other cities, but thereafter these acts had been amended so that when article XX was adopted Denver's regulation of the liquor traffic was then subject to the existing laws of the state. Under such circumstances and in the absence of some language in article XX to indicate to the contrary, we cannot believe that it was intended to divest the state of its entire jurisdiction in this territory upon this important subject.

Plaintiff in error makes the further contention that after the adoption of the revenue act of 1902 the state license might be the license referred to by the act hereinbefore quoted; that the revenue act should be construed as amending the former act to that extent. We cannot agree with this contention. The revenue act of 1902 concerning a state liquor license in part reads, "every person, company or corporation selling any malt, vinous or spirituous liquors shall, in addition to other license fees exacted by law or by the ordinance of each municipality," etc., "that such license is issued subject to the ordinances of the city or town and the regulations of the county on the subject in which the place so licensed is located."

In *Parsons v. The People,* 32 Colo. 221, it was held that this statute was enacted solely for the purpose of securing revenue for state purposes, and not for the purposes of regulating the liquor traffic, and, that the provisions of the charter of the city of Denver giving the city council exclusive power to license, regulate and

tax the selling and giving away of intoxicating liquors did not exempt liquor dealers within the city from the provisions of this act which required all persons dealing in liquors to pay to the state the annual license fee.

In *Clayton v. The People*, 53 Colo. 124, we held that the local option act of 1907 did not conflict with the amendatory act of 1911 concerning the state revenue license for the sale of intoxicating liquors, also that neither the original act of 1902 nor the amendment thereof in 1911 authorized the holder of the license from the state to make sale of intoxicating liquors, but that these enactments went no further than to provide that one authorized by law or ordinance to engage in that business should, in addition to all other enactments, pay to the state the annual license fee prescribed; that their purpose was solely to procure revenue for state purposes. It follows that neither the original revenue act of 1902 nor the amendatory act of 1911 in any manner amended or repealed the section of the general law under which this prosecution was based.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*